*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

STEVEN MICHAEL LAFOLLETTE,

Defendant-Appellant.

UNPUBLISHED
June 22, 2026
1:19 PM

No. 371804
Ottawa Circuit Court
LC No. 23-045770-FH

Before: MARIANI, P.J., and MURRAY and PATEL, JJ.

PER CURIAM.

Defendant pleaded guilty to second-degree criminal sexual conduct (CSC-II), MCL 750.520c(1)(b)(*ii*) (sexual contact with victim between 13 and 16 years old and related to defendant) and was subsequently sentenced to 84 to 180 months' (7 to 15 years') imprisonment. Defendant now appeals as on leave granted.[1] We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Defendant's conviction arose from his sexual assault of his adoptive niece (the victim) during a family camping trip between May 24, 2019, and June 2, 2019, when the victim was 15 years old. Defendant was initially charged with CSC-III, MCL 750.520d(1)(a) (sexual penetration of a victim between 13 and 16 years old), and CSC-IV, MCL 750.520e(1)(a) (sexual contact with a victim between 13 and 16 years old and at least five years younger than defendant) in connection with the assault, but following plea negotiations, defendant agreed to plead guilty to CSC-II. Pursuant to the agreement, the prosecution would amend the felony information to add the CSC-

---

[1] Following this Court's denial of defendant's application for leave to appeal, *People v LaFollette*, unpublished order of the Court of Appeals, entered September 12, 2024 (Docket No. 371804), our Supreme Court remanded this case for consideration as on leave granted. *People v LaFollette*, ___ Mich ___ (2025) (Docket No. 167762).

-1-

II charge as a third charged offense, and in exchange for defendant's guilty plea to that charge, the prosecution would dismiss the CSC-III and CSC-IV charges against him.

At the plea hearing, the trial court read the terms of the plea agreement, all parties indicated that they agreed to the terms, and defendant stated that he wished to accept those terms. After placing defendant under oath and examining him further, the court concluded that defendant was entering his plea knowingly and voluntarily. The court, with defense counsel's assistance, also obtained a factual basis for the plea. For purposes of his plea, defendant admitted that between May 24, 2019, and June 2, 2019, he, "[o]n one or more occasions," had "placed [the victim's] foot on [his] penis" and had done so "for a sexual purpose." Defense counsel clarified that "this [wa]s a situation where [defendant] has a foot fetish and he was rubbing [the victim's] feet and he rubbed her feet on his erection." Defendant also admitted that he was the victim's adoptive uncle, that the victim was between 13 and 16 years old, and that he was an adult at the time of the assault. The court accepted defendant's guilty plea and scheduled the matter for sentencing.

The presentence investigation report (PSIR) created for sentencing provided a more comprehensive description of the assault. According to the victim, on the Friday of her family's weekend camping trip, she walked to a playground with defendant. Once there, defendant climbed into a large tire stack and asked the victim to join him. The victim obliged and, at defendant's direction, sat on his lap. Defendant then began to touch her shoulders and rub her feet. He also occasionally "pick[ed] her up and move[d] her on his lap while squeezing her behind for a few seconds," but the victim believed he had done so to adjust her on his lap. The victim reported that "she could feel [defendant] getting an erection underneath her" and that although it made her feel "uneasy," she "did not really think anything of it" and "tried to brush it off."

The victim then reported that, the next day, defendant sexually assaulted her in his camper. The victim stated that she entered the camper by herself to play with defendant's new puppy. Shortly thereafter, defendant, who was noticeably intoxicated, entered the camper; the victim pretended to be asleep in hopes that he would leave her alone. Defendant instead sat down next to her and "then started to massage and kiss her feet," but he subsequently "moved from her feet to her shoulders and back," and eventually to her calves and thighs. After massaging those areas for several minutes, defendant pulled the victim's bottoms off and to the side. Defendant groped the victim's buttocks as he did so, apparently "squeezing her butt so hard that it left a hand-shaped bruise that was there for two or three days." Defendant thereafter attempted to penetrate the victim's vagina with his penis but was unsuccessful, and so he digitally penetrated the victim instead. Defendant eventually put the victim's clothes back on, ejaculated in the bathroom, and left.

As for defendant, the PSIR quoted his description of the offense as, " 'I got an erection and rubbed [the victim's] foot on it.' " Defendant also "indicated that he was prone to drinking more when camping and acknowledged that he had been drinking when committing the instant offense."

Defendant's minimum sentencing guidelines range was determined to be 43 to 86 months and, as noted, defendant was sentenced to an 84-month minimum term of imprisonment. As relevant here, the trial court assessed five points for offense variable (OV) 3 and 25 points for OV 11. Defendant raised challenges to the scoring of both, which the trial court denied. In doing so, the court indicated that it had relied on the description of the offense contained in the PSIR to

determine the appropriate scores for the OVs and that such information established, by a preponderance of the evidence, that five points for OV 3 and 25 points for OV 11 were warranted.

This appeal followed.

## II. STANDARDS OF REVIEW

On appeal, defendant challenges the scoring of OVs 3 and 11, and also contends that his within-guidelines sentence was unreasonable, disproportionate, and unconstitutionally cruel and/or unusual. We review a trial court's factual findings under the sentencing guidelines for clear error, and we review de novo whether those factual findings "are adequate to satisfy the scoring conditions prescribed by statute[.]" *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). "A trial court's findings of fact are clearly erroneous if, after reviewing the entire record, we are definitely and firmly convinced that the trial court made a mistake." *People v Carlson*, 332 Mich App 663, 666; 958 NW2d 278 (2020). The trial court's factual findings "must be supported by a preponderance of the evidence," *Hardy*, 494 Mich at 438, which "means such evidence as, when weighed with that opposed to it, has more convincing force and the greater probability of truth," *People v Cross*, 281 Mich App 737, 740; 760 NW2d 314 (2008). "When calculating sentencing guidelines, the trial court may consider all record evidence, including the presentence investigation report (PSIR), plea admissions, and testimony," and it may rely on all reasonable inferences therefrom. *People v Montague*, 338 Mich App 29, 55; 979 NW2d 406 (2021).

Defendant's proportionality challenge to his within-guidelines sentence is reviewed for reasonableness. See *People v Posey*, 512 Mich 317, 359-360; 1 NW3d 101 (2023). "[T]he proper inquiry when reviewing a sentence for reasonableness is whether the trial court abused its discretion by violating the 'principle of proportionality' set forth in *People v Milbourn*, 435 Mich 630, 636; 461 NW2d 1 (1990), 'which requires sentences imposed by the trial court to be proportionate to the seriousness of the circumstances surrounding the offense and the offender.' " *People v Steanhouse*, 500 Mich 453, 459-460; 902 NW2d 327 (2017).

We review questions of constitutional law de novo. *People v Boykin*, 510 Mich 171, 183; 987 NW2d 58 (2022).

## III. OV SCORING

Defendant first argues that he is entitled to resentencing because the trial court erroneously scored OV 11. According to defendant, a criminal sexual penetration may be scored for purposes of OV 11 only if it arises out of the sentencing offense, but here, no penetration of the victim arose out of the sentencing offense.

OV 11 is scored for "criminal sexual penetration," and a sentencing court must assess 25 points for OV 11 if "[o]ne criminal sexual penetration occurred." MCL 777.41(1)(b). In scoring OV 11, the sentencing court must "[s]core all sexual penetrations of the victim by the offender

arising out of the sentencing offense." MCL 777.41(2)(a).[2] This includes "uncharged sexual penetrations." *People v Lampe*, 327 Mich App 104, 119; 933 NW2d 314 (2019). For purposes of scoring OV 11, a criminal sexual penetration "arises out of" the sentencing offense when it "has a connective relationship, a cause and effect relationship, of more than an incidental sort with the event out of which it has arisen." *People v Johnson*, 474 Mich 96, 101; 712 NW2d 703 (2006) (cleaned up). Accordingly, when the sexual penetration at issue occurs "at the same place, under the same set of circumstances, and during the same course of conduct" as the sentencing offense, it has been found to unambiguously arise out of the sentencing offense. *Id*. at 100 (cleaned up).

In this case, the trial court concluded that OV 11 should be scored at 25 points based on defendant's conduct during the camper incident, which included both the sentencing offense and the digital penetration of the victim. The court found that the PSIR's description of the sentencing offense established, by a preponderance of the evidence, that that incident was "one transaction with multiple events within" it and not "separate transactions over a period of time," and so defendant's digital penetration of the victim in the camper arose from the sentencing offense.

We see no reversible error in the trial court's finding that the camper incident was a single transaction comprising both defendant's sentencing offense and his penetration of the victim, as a preponderance of the evidence, along with the reasonable inferences drawn therfrom, supported such a finding. See *Hardy*, 494 Mich at 438; *Montague*, 338 Mich App at 55; *Cross*, 281 Mich App at 740. Defendant pleaded guilty to having sexual contact with the victim by placing her foot on his penis, and he offered the same basic description of the offense for the PSIR. In the PSIR, the victim did not specifically recount defendant placing her foot on his penis—but she did report that he touched her feet in a sexual manner by rubbing and kissing them, and then attempted to penetrate her vagina with his penis. When that attempted penetration failed, defendant digitally penetrated her vagina. All of this occurred "at the same place, under the same set of circumstances, and during the same course of conduct." *Johnson*, 474 Mich at 100.

On appeal, defendant does not particularly dispute that the conduct during the camper incident constituted a single transaction for purposes of OV 11. Instead, he argues that the sentencing offense was not a part of the camper incident, but rather occurred the day prior to it, when defendant and the victim were alone in the tire stack. And since the penetration reported by the victim occurred the day after that, "at a separate event and transaction" than the "non penetration offense" he pleaded to, it could not be scored for purposes of OV 11.

Defendant, however, offers nothing in the record to substantiate his position that the offense he pleaded to and was sentenced for was based on the tire-stack incident, and not the camper incident. Nothing about defendant's guilty plea itself suggested as much, nor does any other part of the record. In the PSIR, the victim reported that, while in the tire stack together, defendant rubbed her feet and shoulders while she sat on his lap, and although "she could feel him

---

[2] An exception to this general requirement is that no points may be scored for the one sexual penetration forming the basis of a CSC-I or CSC-III sentencing offense. See MCL 777.41(2)(c); *People v Lampe*, 327 Mich App 104, 117-118; 933 NW2d 314 (2019). But because defendant's sentencing offense was CSC-II, this exception does not apply in this case.

getting an erection underneath her" she "did not really think anything of it." This is less akin to his pleaded-to conduct than what he was reported to have done to the victim while in the camper. Furthermore, the PSIR specifically indicated that defendant was intoxicated during the camper incident and that defendant, for his part, had stated that "he had been drinking when committing the instant offense."

Nor does defendant's position on appeal find support in the parties' and trial court's discussion of the matter at sentencing. The prosecution stated at sentencing that all three charged offenses in this case, including defendant's sentencing offense, were based on conduct that had "all happened within minutes if not seconds of each other while the victim was lying on the sofa in the camper." In response, defense counsel maintained that "[t]here were three counts because there were three separate occurrences," but also acknowledged that "they might have happened on the same day." And the trial court, in addition to scoring OV 11 on the basis of the camper incident, assessed 15 points for OV 10 "because there was pre-offense conduct the day before" the sentencing offense that was predatory. See MCL 777.40(1)(a) and (3)(a). In response to that scoring, defense counsel simply noted that "it's [defendant's] word against [the victim's]"; he did not suggest the scoring may have been improper because the conduct the court deemed to be "pre-offense"—that during the tire-stack incident—was in fact the sentencing offense itself.

In sum, the trial court concluded that 25 points should be assessed for OV 11 because, based on the information before the court and the reasonable inferences drawn therefrom, a preponderance of the evidence showed that one criminal sexual penetration arising out of the sentencing offense occurred. See MCL 777.41(1)(b) and (2)(a); *Johnson*, 474 Mich at 101-102; *Lampe*, 327 Mich App at 117-119; see also *Hardy*, 494 Mich at 438; *Montague*, 338 Mich App at 55.[3] We find no reversible error in that conclusion.

## IV. PROPORTIONALITY OF SENTENCE

Defendant next argues that his within-guidelines sentence was disproportionate and unreasonable. But this challenge also lacks merit.

A proportionate sentence generally considers "the reformation of the offender, the protection of society, the discipline of the offender, and the deterrence of others from committing the same offense." *Boykin*, 510 Mich at 183. But "these are not the only relevant sentencing criteria and trial courts are not required to consider each of these factors when imposing a sentence." *Id*. at 183-184. A within-guidelines sentence is presumptively proportionate, and "the defendant bears the burden of demonstrating that their within-guidelines sentence is unreasonable or disproportionate." *Posey*, 512 Mich at 359. To do so, a defendant must present "unusual

---

[3] Defendant also challenges the trial court's assessment of five, rather than zero, points for OV 3. His challenge to that effect, however, is also premised on the inadequately substantiated notion that his sentencing offense occurred during the tire-stack incident, and not the camper incident. Furthermore, even if the court erred in scoring OV 3, defendant would not be entitled to resentencing on the basis of that error alone because its correction would not alter his sentencing guidelines range. See *People v Francisco*, 474 Mich 82, 89 n 8; 711 NW2d 44 (2006).

circumstances that would render the presumptively proportionate sentence disproportionate." *People v Ventour*, 349 Mich App 417, 430; 27 NW3d 660 (2023) (quotation marks and citation omitted). Unusual circumstances are ones that are uncommon or rare. *Id*.

In challenging the proportionality of his within-guidelines sentence, the extent of defendant's argument is: "The trial court did not support the 84-month sentence given the seriousness of this case. Other than one digital penetration, the remaining sexual activity involved massages and a foot fetish." This is wholly insufficient to satisfy defendant's burden of overcoming the presumption of his sentence's proportionality. See *Posey*, 512 Mich at 359. Defendant does not identify—and we do not see—any "unusual circumstances" related to himself or the sentencing offense "that would render [his] presumptively proportionate sentence disproportionate." *Ventour*, 349 Mich at 430. Accordingly, defendant has not demonstrated that he is entitled to sentencing relief on this basis. See *id*.; see also *Posey*, 512 Mich at 359.[4]

Affirmed.

/s/ Philip P. Mariani
/s/ Christopher M. Murray
/s/ Sima G. Patel

---

[4] On the same basis, defendant also argues his sentence amounted to cruel and/or unusual punishment under the United States and Michigan Constitutions. See US Const, Am VIII; Const 1963, art 1, § 16. But defendant does not provide any meaningful argument or identify any legal or factual support for this claim, leaving it improperly presented for this Court's review. See *People v Burkett*, 337 Mich App 631, 639 n 4; 976 NW2d 864 (2021).